**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

General Tools & Instruments, LLC,

     Plaintiff,

v.                                Case No.: 1:20-cv-00727

Solid Value,

     Defendant

## COMPLAINT

Plaintiff, General Tools & Instruments, LLC ("General Tools" or "Plaintiff"), by its undersigned counsel, hereby complains of Solid Valud ("Defendant"), and for its Complaint hereby alleges as follows:

## JURISDICTION AND VENUE

1.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.    This Court has personal jurisdiction over Defendant, in that Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which Defendant stands accused were undertaken in Illinois and in this Judicial District.

3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may

properly exercise personal jurisdiction over Defendant since Defendant directly targets consumers in the United States, including Illinois, through at least one fully interactive commercial Internet store operating under the Wish.com Account identified as Solid Value ("Defendant Internet Store"). Specifically, Defendant is reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products using infringing and/or counterfeit versions of Plaintiff's trademarks. Defendant has targeted sales from Illinois residents by operating an online store that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## **<u>INTRODUCTION</u>**

4.      This action has been filed by Plaintiff to combat online counterfeiter Solid Value who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's ANGLE-IZER trademarks, which are covered by U.S. Trademark Registration U.S. Reg. No. 5,345,751 and U.S. Reg. Nos. 5,345,752 (the "ANGLE-IZER Marks"). A true and correct copy of the federal trademark registration certificates for the marks is attached hereto as Exhibit 1.

5.      General Tool's ANGLE-IZER products are used and recognized as a symbol of adjustable templates for use in measuring tiles, bricks, and construction materials for cutting purposes, and computer programs for use in calculating custom dimensions of tiles, bricks, and construction materials sold therein.

6.      The Defendant creates Defendant Internet Store Solid Value and designs it to appear to be selling authorized Plaintiff products, while selling inferior imitations of Plaintiff's products.

Defendant attempts to avoid liability by going to great lengths to conceal both its identity and the full scope of its illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendant's counterfeiting of Plaintiff's registered trademarks, as well as to protect unknowing consumers from purchasing illegal ANGLE-IZER products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendant's actions, and seeks injunctive and monetary relief.

7.     The rise of eCommerce as a method of supplying goods to the public exposes General Tools and other brand holders and creators that make significant investments in their products to significant harm from counterfeiters:

Counterfeiting is no longer confined to street-corners and flea markets. The problem has intensified to staggering levels, as shown by a recent Organization for Economic Cooperation and Development (OECD) report, which details a 154 percent increase in counterfeits traded internationally — from $200 billion in 2005 to $509 billion in 2016. Similar information collected by the U.S. Department of Homeland Security (DHS) between 2000 and 2018 shows that seizures of infringing goods at U.S. borders have increased 10-fold, from 3,244 seizures per year to 33,810.

…

The rise in consumer use of third-party marketplaces significantly increases the risks and uncertainty for U.S. producers when creating new products. It is no longer enough for a small business to develop a product with significant local consumer demand and then use that revenue to grow the business regionally, nationally, and internationally with the brand protection efforts expanding in step. Instead, with the international scope of e-commerce platforms, once a small business exposes itself to the benefits of placing products online — which creates a geographic scope far greater than its more limited brand protection efforts can handle — it begins to face increased foreign infringement threat.

. . .

Moreover, as costs to enter the online market have come down, such market entry is happening earlier and earlier in the product cycle, further enhancing risk. If a new product is a success, counterfeiters will attempt, often immediately, to outcompete the original seller with lower-cost counterfeit and pirated versions while avoiding the initial investment into research and design.

. . .

Counterfeiters have taken full advantage of the aura of authenticity and trust that online platforms provide. While e-commerce has supported the launch of thousands of legitimate businesses, their models have also enabled counterfeiters to easily establish attractive "store-fronts" to compete with legitimate businesses.

*See Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (**Exhibit 2)** at 4, 8, 11.

8.    Members of the general public are also harmed from counterfeiters in eCommerce:

The rapid growth of e-commerce has revolutionized the way goods are bought and sold, allowing for counterfeit and pirated goods to flood our borders and penetrate our communities and homes. Illicit goods trafficked to American consumers by e-commerce platforms and online third-party marketplaces threaten public health and safety, as well as national security. This illicit activity impacts American innovation and erodes the competitiveness of U.S. manufacturers and workers.  P3
The President's historic memorandum provides a much warranted and long overdue call to action in the U.S. Government's fight against a massive form of illicit trade that is inflicting significant harm on American consumers and businesses. This illicit trade must be stopped in its tracks.

*Id.* at 4. (Underlining in original)

### THE PLAINTIFF

9.    Plaintiff, General Tools & Instruments, LLC ("General Tools") is a Limited Liability Company organized under New York law. General Tools maintains its principal place of business at 75 Seaview Drive Secaucus, New Jersey 07094.

10.    Since the initial launch of its original ANGLE-IZER family of measuring tools, the ANGLE-IZER trademarks have been the subject of substantial and continuous marketing and promotion by the Plaintiff, both in the United States and throughout the world. Plaintiff has and continues to widely market and promote its ANGLE-IZER trademarks in the industry and to customers, and, as of the date of this filing, Plaintiff's Products are sold throughout the nation at various national and local retail outlets and hardware chains (e.g., The Home Depot, Walmart, Ace Hardware, Lowes, etc.), as noted on Plaintiff's primary website located at www.generaltools.com.

11.     Plaintiff maintains quality control standards for all ANGLE-IZER products, and the ANGLE-IZER trademarks are a highly visible and a distinctive worldwide symbol of excellent quality products, uniquely associated with the Plaintiff and, as a result, Plaintiff Products bearing the ANGLE-IZER trademarks have generated millions of dollars in revenue over the years.

12. Customers recognize that products bearing the distinctive ANGLE-IZER marks originate exclusively with the Plaintiff. The ANGLE-IZER trademark registrations constitute *prima facie* evidence of its validity, and of Plaintiff's exclusive right to use the ANGLE-IZER trademarks pursuant to 15 U.S.C. § 1057 (b).

13.  The ANGLE-IZER trademarks have been continuously used and never abandoned.

14.  Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the ANGLE-IZER trademarks. As a result, products bearing the ANGLE-IZER trademarks are widely recognized and exclusively associated by consumers, the public, and the tool and construction community as being products sourced from Plaintiff.

## THE DEFENDANT

15.     Upon information and belief, Defendant is a business entity resides in the People's Republic of China. Defendant conducts business throughout the United States, including within Illinois and in this Judicial District, through the operation of the Defendant Internet Store Solid Value. Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit and infringing ANGLE-IZER products to consumers within the United States, including Illinois and in this Judicial District.

## THE DEFENDANT'S UNLAWFUL CONDUCT

16.     The success of the ANGLE-IZER brand has resulted in its counterfeiting and infringement. Plaintiff has identified Defendant's Wish.com Internet listing, which was offering

for sale, selling, and importing counterfeit and infringing ANGLE-IZER products to consumers in this Judicial District and throughout the United States. Internet websites like the Defendant Internet Store are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2013 was over $1.74 billion, up from $1.26 billion in 2012. Internet stores like the Defendant Interne Store are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

17.   Upon information and belief, Defendant facilitates sales by designing the Defendant Internet Store so that it appears to unknowing consumers to be authorized online retailer, outlet store, or wholesaler selling genuine ANGLE-IZER products. Defendant Internet Store includes images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Plaintiff has not licensed or authorized Defendants to use its ANGLE-IZER trademarks, and Defendant is not authorized to retail genuine ANGLE-IZER products.

18.   Defendant in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendant will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit and infringing goods shipped through the mail and express carriers.

19.     Upon information  and belief, Defendant maintains off-shore bank accounts and regularly move funds from its payment accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of payment accounts  transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based payment accounts to China-based bank accounts outside the jurisdiction of this Court.

20.     Defendant, without any authorization or license from Plaintiff, has knowingly and willfully used and continue to use the ANGLE-IZER trademarks in connection with the advertisement, distribution, offer for sale, and sale of counterfeit ANGLE-IZER products into the United States and Illinois over the Internet. Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, Defendant has offered to sell counterfeit and infringing ANGLE-IZER products into the United States, including Illinois.

21.     Defendant's use of the ANGLE-IZER trademarks in connection with the advertising, distribution, offer for sale, and sale of counterfeit ANGLE-IZER products, including the sale of counterfeit and infringing ANGLE-IZER products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers, and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

22.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

23.     This is a trademark infringement action against Defendant Solid Value based on its unauthorized use in commerce of counterfeit imitations of the registered ANGLE-IZER trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The ANGLE-IZER trademarks are a highly distinctive marks. Consumers have

come to expect the highest quality from Plaintiff's products provided under the ANGLE-IZER trademarks.

24. Defendant has sold, offered to sell, marketed, distributed, and advertised, and is still selling, offering to sell, marketing, distributing, and advertising products in connection with the ANGLE-IZER trademarks without Plaintiff's permission.

25. Plaintiff is the exclusive owner of the ANGLE-IZER trademarks. Plaintiff's United States Registrations for the ANGLE-IZER trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendant has knowledge of Plaintiff's rights in the ANGLE-IZER trademarks and is willfully infringing and intentionally using counterfeits of the ANGLE-IZER trademarks. Defendant's willful, intentional and unauthorized use of the ANGLE-IZER trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general consuming public.

26. Defendant's activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

27. Plaintiff has no adequate remedy at law, and if Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known ANGLE-IZER trademarks.

28. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit ANGLE-IZER products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

29. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

30. Defendant's promotion, marketing, offering for sale, and sale of counterfeit ANGLE-

IZER products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendant's counterfeit ANGLE-IZER products by Plaintiff.

31.     By using the ANGLE-IZER trademarks in connection with the sale of counterfeit ANGLE-IZER products, Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit ANGLE-IZER products.

32.     Defendant's false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit ANGLE-IZER products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

33.     Plaintiff has no adequate remedy at law and, if Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**COUNT III**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510, *et seq.*)**

34.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

35.     Defendant has engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit ANGLE-IZER products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine ANGLE-IZER products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

36.     The foregoing Defendant's acts constitute a willful violation of the Illinois Uniform

Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

37.     Plaintiff has no adequate remedy at law, and Defendant's conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendant's unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with it temporarily preliminarily, and permanently enjoined and restrained from:

   a. using the ANGLE-IZER trademarks in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine ANGLE-IZER product, or is not authorized by Plaintiff to be sold in connection with the ANGLE-IZER trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine ANGLE-IZER product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the ANGLE-IZER trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendant's counterfeit ANGLE-IZER products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   d. further infringing the ANGLE-IZER trademarks and damaging Plaintiff's goodwill;

   e. otherwise competing unfairly with Plaintiff in any manner;

   f. shipping, delivering, holding for sale, transferring or otherwise moving, storing,

distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's trademark, including the ANGLE-IZER trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning Solid Value, or online marketplace account that is being used to sell or is the means by which Defendant could continue to sell counterfeit ANGLE-IZER products; and

h. operating and/or hosting websites registered or operated by Defendant that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the ANGLE-IZER trademarks, or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine ANGLE-IZER product or not authorized by Plaintiff to be sold in connection with the ANGLE-IZER trademarks; and

2) That Defendant, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendant have complied with paragraph 1, a through h, above; and

3) That Defendant account for and pay to Plaintiff all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of the ANGLE-IZER trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the ANGLE-IZER trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

DATED: January 31, 2020                    Respectfully submitted,

                                           */s/ Keith A. Vogt*
                                           Keith A. Vogt (Bar No. 6207971)
                                           Keith Vogt, Ltd.
                                           111 W Jackson BLVD, Suite 1700
                                           Chicago, Illinois 60604
                                           Telephone: 312-675-6079
                                           E-mail: keith@vogtip.com

                                           ***ATTORNEY FOR PLAINTIFF***